**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : IN THE SUPERIOR COURT OF |
| | :         PENNSYLVANIA |
| | : |
| v. | : |
| | : |
| | : |
| | : |
| NATHAN WOODHULL SMITH | : |
| | : |
| Appellant | : No. 1289 MDA 2025 |

Appeal from the Judgment of Sentence Entered September 3, 2025
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0001823-2023

BEFORE:  BOWES, J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.:　　　　**FILED: AUGUST 3, 2026**

Nathan Woodhull Smith appeals from the judgment of sentence entered after he was convicted of two counts of rape of a child and other crimes.  Mr. Smith[1] challenges the trial court's denial of a mistrial during a police witness' testimony and an evidentiary ruling that allowed extrinsic evidence of a witness' prior inconsistent statement.  We affirm.

This case concerns allegations that Mr. Smith sexually abused two of his daughters when they were children, from 2004 to 2015.  Trooper Amos Glick filed a criminal complaint on March 15, 2023.  The case was tried before a jury for four days beginning on March 17, 2025.

Trooper Glick testified that because the reported abuse was several years prior, his approach to the investigation shifted from collecting physical

---

[1] For clarity, we refer to defendant–appellant Nathan Smith as Mr. Smith, his wife Virginia Smith as Virginia, and their youngest son Jesse Smith as Jesse.

evidence "to what's called corroborating evidence."  N.T., 3/19/25, at 623.

The prosecutor asked Trooper Glick about obtaining corroborating evidence

by interviewing members of Mr. Smith's family, including Mr. Smith himself.

> Q.     Who did you interview in December of 2022?
>
> A.     So I interviewed [two of Mr. Smith's adult sons and one son's wife].  I attempted to interview [another of Mr. Smith's sons].  He essentially declined my interview.
>
> I attempted to interview -- I believe this was at the same time, if I remember correctly, attempted to interview the defendant.
>
> Q.     So you did not get any statements from the defendant at all; right?
>
> A.     I did not.  I attempted to but did not.

*Id.* at 640.  Mr. Smith did not object to Trooper Glick's testimony at this point.

Later, when Trooper Glick testified that he drove to Mr. Smith's

residence, Mr. Smith (and the prosecutor) interjected.  The court held a

sidebar, where the prosecutor mentioned that Trooper Glick already said that

he did not get a statement from Mr. Smith.  The prosecutor indicated she

would not question Trooper Glick further about that part of his investigation.

> Q.     . . . Moving on in your investigation then.  After your interview with Virginia, what do you do next?
>
> A.     Well, that concluded -- after the text messages, that concluded the interview with Virginia.
>
> I then proceeded to -- I believe this was the same day, if I remember correctly.  I attempted to interview the defendant, if I remember right.  I drove right from her place of employment a few miles to where the defendant lived and asked --
>
> [Defense counsel]: Your Honor, may we approach?

[Prosecutor]: Yeah.

THE COURT: Come on up.

(The following discussion occurred at sidebar:)

THE COURT: You're not going any further?

[Prosecutor]: Yeah, yeah. He had already said before, he did not get a statement, yes.

(The discussion at sidebar concluded.)

*Id.* at 649.

At an ensuing break, Mr. Smith moved for a mistrial. He cited Trooper Glick's testimony that he attempted to contact the defendant but did not get a statement from him. The trial court noted that counsel interjected before Trooper Glick said anything inappropriate. The court denied the motion.

[Defense counsel]: Your Honor, I did want to make a motion for a mistrial, and I want to put that on the record.

Shortly before we broke for lunch, the trooper was on direct examination. I think he was leading into the next part of his investigation and said he attempted to contact the defendant.

I'm not sure if those were exactly the words, but something very similar to that. And then, as you recall, I asked to approach, knowing that that going any further would cause a problem.

THE COURT: . . . [A]re you asking for a mistrial based on that?

[Defense counsel]: Yes.

THE COURT: Got it.

[Prosecutor]: Your Honor, he did not go any further, and he had already said previously that he did not get a statement from the defendant. It did not go into anything that would have required a mistrial at this point.

THE COURT: Yes, I think that the trooper had slowed his pace as he was getting towards that kind of testimony.

Before any words came out of his mouth, both [attorneys] stood up. There was nothing inappropriate about the objection that either side had.

At that point, we just simply stopped. We had a sidebar conversation. I don't think there's been any prejudice. The motion for a mistrial is denied.

*Id.* at 657–58.

Relevant to this appeal, the Commonwealth also presented testimony from Mr. Smith's wife Virginia and Mr. Smith's son Jesse. The Commonwealth asked Virginia about talking with Jesse about the allegations. At sidebar, the prosecutor indicated the Commonwealth intended to elicit that Mr. Smith told Virginia he was afraid he would go to jail, which (according to Jesse) Virginia told Jesse. However, Virginia denied that Mr. Smith told her he was panicking or that she related this to Jesse.

[By the prosecutor]: Again, after all of this came out in the family, did you ever talk to any of your sons about it?

[Virginia]: Yes.

Q. Who did you talk to?

A. I talked to all three of them.

Q. Okay. Well, start with Jesse.

A. Okay.

Q. Do you remember having a conversation with Jesse about it?

A. Yeah. He said, mom, I never saw --

[Defense counsel]: Objection, relevance.

[Virginia]: I'm sorry, hon.

THE COURT: Counsel, you may approach.

(The following discussion occurred at sidebar:)

- 4 -

[Defense counsel]: Relevance and probably getting into hearsay.

THE COURT: Yeah.

[Prosecutor]: Well, it's about what the defendant told her. So she told Jesse about what the -- that the defendant was panicking. He was afraid that he was going to be going to jail.

THE COURT: The defendant told her that?

[Prosecutor]: That's what she tells to Jesse Smith. That's why I'm asking her.

THE COURT: It's not what she talked to Jesse about, it's what he said.

[Prosecutor]: Well, it's a party opponent statement.

THE COURT: As to anything Jesse might say back, that would be hearsay.

[Prosecutor]: Well, she's the one who said that to Jesse. So if she lies about it, then I can have Jesse testify to a prior inconsistent statement.

THE COURT: Relative to what he may have said to her, the defendant may have said to her. That would be relevant.

[Defense counsel]: I think if it's a statement he made to her.

[Prosecutor]: Yeah, that's --

[Defense counsel]: But that's what she's telling Jesse?

[Prosecutor]: Right.

THE COURT: See if you can tighten it up.

[Prosecutor]: Yes. The only thing is, I mean, she's denying mostly everything. So if she denies that, then I would have Jesse testify to it.

THE COURT: Okay. Your objection is noted and overruled inasmuch as it sounds like it's going to be an admission by a party opponent. We'll see.

Counsel, you can raise it again if it's not.

[Defense counsel]: Thank you.

(The discussion at sidebar concluded.)

[By the prosecutor]:

Q. After all of this, the allegation, again, after everything came out about the girls telling everybody about what the defendant did to them, did the defendant ever get worried with you that he was going to go to jail and that he was panicking about the allegations?

A. No.

Q. Do you recall telling Jesse that he was panicking and that he was afraid that he was going to go to jail?

A. No.

Q. You never told Jesse that?

A. No.

N.T., 3/18/25, at 473–76.

The next day, during Jesse's testimony, Mr. Smith objected to the prosecutor asking what Virginia told Jesse. At sidebar, the prosecutor explained the theory that it was a prior inconsistent statement for impeachment. Mr. Smith did not object that Virginia had not been presented with her statement or given an opportunity to explain or deny making it.

[Prosecutor:] . . . And when you found out about the specific allegations of this case, did you have any conversations with your parents?

[Jesse:] Yes, my mother.

Q. Okay. And can you tell me what she told you about that?

[Defense counsel]: Objection, hearsay.

[Prosecutor]: It's going to be a prior inconsistent statement, Judge.

THE COURT: Approach.

(The following discussion occurred at sidebar:)

THE COURT: So relative to something mom said, you are going to impeach her credibility?

[Prosecutor]: Correct. When she was on the stand yesterday and I asked her about the defendant panicking and afraid to go to jail.

THE COURT: What's your response?

[Defense counsel]: He's going to say that she didn't panic? I don't understand.

[Prosecutor]: No, no.

[Defense counsel]: She said that she didn't on the stand.

[Prosecutor]: And then I said, well, didn't you say that to Jesse? And she said no.

[Defense counsel]: Oh, okay, I got you. Okay.

THE COURT: So for impeachment purposes, yes?

[Prosecutor]: Correct.

(The discussion at sidebar concluded.)

[By the prosecutor]:

Q. So what did your mother tell you about the situation with the case?

A. She said that -- I believe at that time, it was when my father was arrested. And she was very upset. And she said that he was upset and that he was in a bit of a panic at home. You know, he was panicking that he was going to jail. He kept saying he was going to go to jail and he's going to die in jail.

N.T., 3/19/25, at 532–34.

The jury found Mr. Smith guilty. On September 3, 2025, the trial court sentenced Mr. Smith to an aggregate term of 42 to 100 years of confinement.

- 7 -

Mr. Smith timely appealed. Mr. Smith and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Mr. Smith maintains two issues for review:

A. Whether the trial court erred by not granting a mistrial after the Commonwealth violated the Defendant's right against self-incrimination under the Fifth Amendment of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution, when the Trooper testified in two (2) separate lines of questioning that despite his attempts to interview the Appellant, he did not get any statements?

B. Whether the trial court abused its discretion when it committed an error of law by allowing hearsay through improper impeachment of witness, specifically Virginia Smith and the alleged conversation with Jesse Smith regarding the Defendant's statements about going to jail, and dying there?

Mr. Smith's Brief at 8.

Mr. Smith's first issue is a challenge to the denial of his motion for a mistrial based on the two portions of Trooper Glick's testimony excerpted above. He argues that these statements both violated his constitutional right against self-incrimination and caused prejudice that required a mistrial.

At trial, a trial court exercises discretion in determining whether to grant a defendant's motion for a mistrial.

> In criminal trials, declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial. By nullifying the tainted process of the former trial and allowing a new trial to convene, declaration of a mistrial serves not only the defendant's interest but, equally important, the public's interest in fair trials designed to end in just judgments. Accordingly, the trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In

making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, . . . assess the degree of any resulting prejudice.

***Commonwealth v. Cole***, 167 A.3d 49, 73 (Pa. Super. 2017) (quoting ***Commonwealth v. Culver***, 51 A.3d 866, 871 (Pa. Super. 2012)). To provide the trial court the chance to address the event in the first instance, a defendant must raise a timely objection and request a mistrial on that basis. ***See id.*** at 76–77 (citing Pa.R.A.P. 302(a), which prohibits raising an issue on appeal that was not first raised in the trial court).

A reviewing court, in turn, determines whether the trial court's ruling on a motion for mistrial is an abuse of discretion. ***Commonwealth v. Wright***, 961 A.2d 119, 142 (Pa. 2008) (citing ***Commonwealth v. Simpson***, 754 A.2d 1264, 1272 (Pa. 2000)). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will [then] discretion is abused." ***Id.***

The Constitutions of the United States and Pennsylvania provide a right against being compelled to give evidence against oneself in a criminal case. ***Commonwealth v. Rivera***, 296 A.3d 1141, 1142 (Pa. 2023) (citing Pa. Const. art. 1, § 9 and U.S. Const. amend. V). Generally, the Commonwealth cannot use a defendant's pre-arrest silence as substantive evidence of guilt. ***Commonwealth v. Molina***, 33 A.3d 51, 66 (Pa. Super. 2011) (*en banc*),

*aff'd*, 104 A.3d 430 (Pa. 2014).[2]   However, "the mere revelation of silence does not establish innate prejudice." ***Commonwealth v. DiNicola***, 866 A.2d 329, 336–37 (Pa. 2005) (following ***Commonwealth v. Whitney***, 708 A.2d 471, 478 (Pa. 1998)).   Evidence of a defendant's pre-arrest silence is permissible if it is not exploited to burden the right against self-incrimination or create an inference of a tacit admission of guilt. ***Commonwealth v. Adams***, 39 A.3d 310, 318 (Pa. Super. 2012), *aff'd*, 104 A.3d 511 (Pa. 2014). For example, evidence that a defendant refused to cooperate with a police investigation may be offered for the "narrow purpose" of showing "the nature and focus of the investigation" and laying a foundation for how other evidence was obtained. ***E.g.***, ***id.*** at 319.

Here, Trooper Glick testified twice about attempting to obtain a statement from Mr. Smith.   The first time, Trooper Glick said he "attempted to interview the defendant" and that he "attempted to [get a statement] but did not."  N.T., 3/19/25, at 640.  Mr. Smith did not object at the time.

The second time Trooper Glick testified about trying to interview Mr. Smith, counsel interjected before the trooper said what happened at that point in the investigation.  "I attempted to interview the defendant, if I remember right.  I drove right from [Virginia's] place of employment a few miles to where the defendant lived and asked --"  N.T., 3/19/25, at 649.  Mr. Smith requested

---

[2] This Court's *en banc* holding in **Molina** and its affirmance on allocatur both applied to the pre-arrest silence of a defendant who did not testify at trial. For our analysis, we assume without deciding that the same rule applies to Mr. Smith, who did not speak to police before his arrest but did testify at trial.

a mistrial based on this portion of Trooper Glick's testimony. *Id.* at 657 ("I asked to approach, knowing that going any further would cause a problem."). The trial court reasoned that there was no prejudice because both counsel stood up before Trooper Glick testified further. *Id.* at 658. The trial court later explained that the limited testimony was offered only to explain the extent and focus of his investigation, not to create an inference that Mr. Smith was tacitly admitting his guilt. Trial Court Opinion, 10/29/25, at 6–7 (following *Adams*, 39 A.3d at 319).

We discern no abuse of discretion. Counsel's reaction to Trooper Glick's testimony prevented the trooper from stating the result of his attempt to interview Mr. Smith. Neither Trooper Glick nor the Commonwealth contended that Trooper Glick's attempt to interview Mr. Smith meant that Mr. Smith was admitting guilt. The trial court could find from the trooper's testimony that he was describing the direction of his investigation, not commenting on Mr. Smith's right to remain silent. Therefore, Mr. Smith has failed to persuade us that the trial court abused its discretion when it denied a mistrial. Mr. Smith's first issue fails.

Mr. Smith's second issue is a challenge to the trial court's ruling that allowed Jesse to testify that Virginia told him that Mr. Smith was afraid to go to jail. As Jesse's testimony was used to impeach Virginia's credibility, Mr. Smith argues on appeal that the Commonwealth did not meet two of the three foundational requirements of the applicable rule of evidence. Specifically, Mr. Smith claims that the Commonwealth **did not** disclose the contents of

Virginia's statement to her and **did not** give her an opportunity to explain or deny making the statement. Mr. Smith also protests the Commonwealth being allowed to impeach a witness whom it had called.

The Commonwealth argues that it **did** disclose the contents of Virginia's statement to her and **did** give her an opportunity to explain or deny making the statement. The Commonwealth adds that the trial court properly instructed the jury that Jesse's testimony about what Virginia told him could be considered only for judging Virginia's credibility, not for its truth.

Evidentiary rulings are "addressed to the sound discretion of the trial court," and this Court reviews evidentiary issues for an abuse of discretion. ***Commonwealth v. Charleston***, 16 A.3d 505, 526 (Pa. Super. 2011)[3] (citing ***Commonwealth v. Mayhue***, 639 A.2d 421, 431 (Pa. 1994)).

Pennsylvania Rule of Evidence 613 provides that a witness' prior inconsistent statement can be admissible for impeachment purposes; because the statement is not elicited for the truth of the matter asserted, it is not excluded by the rule against hearsay. ***Id.*** at 527 (comparing Pa.R.E. 613 and 801). If the inconsistent statement is introduced by extrinsic evidence, such as testimony from another witness, part (b) of Rule 613 imposes three foundational requirements:

> **(a) Witness's Prior Inconsistent Statement to Impeach.** A witness may be examined concerning a prior inconsistent

---

[3] ***Charleston*** was abrogated on a different issue, the scope of review for a suppression issue. ***In re L.J.***, 79 A.3d 1073, 1087 (Pa. 2013). The treatment of Rule 613 remains valid.

statement made by the witness to impeach the witness's credibility. The statement need not be shown or its contents disclosed to the witness at that time, but on request, the statement or contents must be shown or disclosed to an adverse party's attorney.

**(b) Extrinsic Evidence of a Witness's Prior Inconsistent Statement.** Unless the interests of justice otherwise require, extrinsic evidence of a witness's prior inconsistent statement is admissible only if, during the examination of the witness,

> (1) the statement, if written, is shown to, or if not written, its contents are disclosed to, the witness;

> (2) the witness is given an opportunity to explain or deny the making of the statement; and

> (3) an adverse party is given an opportunity to question the witness.

This subdivision does not apply to an opposing party's statement as defined in Rule 803(25).

Pa.R.E. 613(a), (b).

In **Charleston**, under this rule, the Commonwealth was permitted to impeach "a reluctant witness" that it had called about statements she made to a third party. 16 A.3d at 526. The witness, Ms. Sanders, "denied ever having . . . a conversation with Ms. Stanton," the third party, in which Ms. Sanders mentioned prior inculpatory statements from the defendant. **Id.** The Commonwealth then, over objection, presented testimony from Ms. Stanton about her conversation with Ms. Sanders. **Id.** at 527. This Court found no abuse of discretion in the trial court allowing the testimony, as the Commonwealth met each requirement from Rule 613(b):

> Subsection one of the rule was complied with because the Commonwealth disclosed to Ms. Sanders the contents of her statement to Ms. Stanton. The Commonwealth also complied with

- 13 -

subsection two because it asked Ms. Sanders if she made the statement and she denied making it. Finally, subsection three was satisfied, as the defense was given an opportunity to question Ms. Sanders. Therefore, Ms. Stanton's testimony in which she relayed Ms. Sanders' prior inconsistent statement was property admitted for purposes of impeachment.

*Id.*

Here, the trial court reasoned that Jesse's testimony of what Virginia told him was inconsistent with Virginia's in-court testimony and was thus admissible under Rule 613. Trial Court Opinion, 10/29/25, at 11–12. The trial court did not address whether the Commonwealth met the three requirements under Rule 613(b) to introduce *extrinsic* evidence of Virginia's prior statement. Perhaps this is because Mr. Smith objected on the basis of hearsay and not under Rule 613. Mr. Smith did not argue to the trial court that the Commonwealth never disclosed Virginia's statement to her or gave her an opportunity to explain or deny it.[4] Nonetheless, the Commonwealth's questioning of Virginia provided a basis for the trial court to find that the requirements of Rule 613(b) were met. The prosecutor asked Virginia if Mr. Smith "ever [got] worried with you that he was going to go to jail and that he

---

[4] At trial, Mr. Smith objected to hearsay; when the prosecutor explained the Commonwealth's impeachment theory, counsel said, "Oh, okay, I got you. Okay." N.T., 3/19/25, at 532–33. On appeal, Mr. Smith alleged the trial court "abused its discretion when it committed an error of law by allowing hearsay through improper impeachment of witness, specifically Virginia Smith and the alleged conversation with Jesse Smith regarding the Defendant's statements about going to jail, and dying there." Statement of Errors, 9/29/25.

was panicking about the allegations," which Virginia denied. N.T., 3/18/25, at 476. The next two questions were about what Virginia told Jesse:

> Q. Do you recall telling Jesse that he was panicking and that he was afraid that he was going to go to jail?
>
> A. No.
>
> Q. You never told Jesse that?
>
> A. No.

*Id.*

These direct, leading questions support a discretionary determination by the trial court that the Commonwealth disclosed Virginia's statement and gave her an opportunity to explain or deny it. Thus, the impeachment by a prior inconsistent statement was proper under Rule 613(b).

Finally, to the extent that Mr. Smith preserved his challenge about a party impeaching a witness whose testimony was offered by that party, such impeachment is permissible under the rules of evidence. "Any party, including the party that called the witness, may attack the witness's credibility." Pa.R.E. 607(a). Mr. Smith's second issue fails.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>8/3/2026</u>